# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 20, 2010

## GERALD HARRIS v. TENNESSEE BOARD OF PROBATION & PAROLE

**Direct Appeal from the Chancery Court for Davidson County**
**No. 09-545-II     Carol L. McCoy, Chancellor**

---

**No. M2009-01904-COA-R3-CV - Filed August 13, 2010**

---

This is an appeal from the dismissal of an inmate's petition for common law writ of certiorari. The petition alleged, *inter alia*, that the Tennessee Board of Probation and Parole arbitrarily and illegally denied the inmate's request for parole. The Board filed a motion to dismiss the petition pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure. Rather than issue the writ and order the filing of the certified record, the trial court dismissed the petition for failure to state a claim upon which relief could be granted. The inmate appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the trial court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J. and J. STEVEN STAFFORD, J., joined.

Gerald Harris, *Pro se*.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, and Kellena Baker, Assistant Attorney General, for the appellee, Tennessee Board of Probation & Parole.

## OPINION

### I. Background and Procedural History

The petitioner/appellant, Gerald Harris, is an inmate at the South Central Correctional

Facility in Clifton, Tennessee.[1] In 1992, Mr. Harris pled guilty to charges of rape and incest because he believed he was guilty and "it was the right thing to do."[2] As a result, Mr. Harris received an eight-year sentence with a thirty percent release eligibility date. The terms of Mr. Harris's sentence permitted him to serve one year in the White County Jail in Sparta, Tennessee and seven years of probation in New York, New York. When Mr. Harris arrived in New York, his probation officer allegedly informed him that he would not need to report on a regular basis because the officer was already overburdened with local offenders. Mr. Harris was nevertheless arrested for probation violation in November 2007 and later extradited to Tennessee. Upon return, Mr. Harris was found guilty of a first offense probation violation and apparently ordered to serve out the remainder of his original sentence with the possibility of parole. In October 2008, Mr. Harris appeared before the Tennessee Board of Probation and Parole ("the Board") at a hearing to determine whether he should be released on parole. The Board determined Mr. Harris should not receive parole and deferred his next parole hearing for three years.

Mr. Harris filed a petition for common law writ of certiorari with the Davidson County Chancery Court challenging the Board's decision. The petition alleged that the Board arbitrarily and illegally denied him parole, arbitrarily declined to permit reconsideration of parole for three years, and illegally miscalculated his release eligibility date. Mr. Harris later filed an amended petition alleging that the Board's failure to provide him a recording of his parole hearing for review violated his procedural rights. The Board responded with a motion to dismiss pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure arguing that the petition failed to state a claim upon which relief could be granted. The Board asserted that it properly denied parole pursuant to Tennessee Code Annotated section 40-35-503, which requires denial of parole if the Board determines that:

> (1) There is a substantial risk that the defendant will not conform to the conditions of the release program;
> (2) The release from custody at the time would depreciate the seriousness of the crime of which the defendant stands convicted or promote disrespect for the law[.]

Tenn. Code Ann. § 40-35-503(b)(1)-(2)(2006). The Board further submitted that deferring Mr. Harris's next parole hearing for three years was within its discretion and that, to the extent Mr. Harris argued his due process rights were violated, he failed to state a claim upon

[1]The following facts are derived solely from Mr. Harris's petition.

[2]Mr. Harris's petition suggests he now believes he was not guilty of incest because he discovered he was unrelated to the victim.

which relief could be granted because he was not entitled to any due process protections during the parole hearing.  Finally, the Board submitted that a petition for writ of certiorari was not the proper vehicle by which to assert error in the calculation of an inmate's release eligibility date.  The trial court granted the Board's motion and dismissed the petition in its entirety.  Mr. Harris timely appealed.

## II.  Issues Presented

Mr. Harris presents the following issues, as we perceive them, for review:

(1)     Whether the petitioner stated a claim upon which relief could be granted when he alleged that the Board arbitrarily and illegally denied him parole;

(2)     Whether the petitioner stated a claim upon which relief could be granted when he alleged that the Board arbitrarily deferred reconsideration of his request for parole for three years;

(3)     Whether the petitioner stated a claim upon which relief could be granted when he alleged that the Board illegally miscalculated his release eligibility date at eighty-five percent of his eight-year sentence;

(4)     Whether the petitioner stated a claim upon which relief could be granted when he alleged that the Board violated his procedural rights when it failed to provide him a recording of his parole hearing.

We will address these issues in turn.[3]

## III.  Standard of Review

The Tennessee Supreme Court in *Willis v. Tennessee Department of Correction*, 113 S.W.3d 706 (Tenn. 2003), stated the standard when evaluating the dismissal of a petition for writ of certiorari for failure to state a claim as follows:

The sole purpose of a Tennessee Rule of Civil Procedure 12.02(6) motion to

---

[3]We note that Mr. Harris has not alleged that the Board failed to afford him procedural due process during the hearing, violated the laws of Tennessee or rule and regulations of the Board in the conduct of the hearing, or otherwise deprived him of a full and fair opportunity to present his case for parole.  Rather, the majority of his petition focuses on the alleged arbitrariness of the Board's resulting decision.

dismiss is to test the sufficiency of the complaint, not the strength of the plaintiff's evidence. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Riggs v. Burson*, 941 S.W.2d 44, 47 (Tenn. 1997). When reviewing a dismissal of a complaint under Rule 12.02(6), this Court must take the factual allegations contained in the complaint as true and review the trial court's legal conclusions *de novo* without giving any presumption of correctness to those conclusions. *See, e.g.*, *Doe v. Sundquist*, 2 S.W.3d at 922. Because a motion to dismiss a complaint under Rule 12.02(6) challenges only the legal sufficiency of the complaint, courts should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *See, e.g.*, *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002).

*Willis*, 113 S.W.3d at 710. It should be apparent, therefore, that our only task in this appeal is to review Mr. Harris's petition, accepting its allegations as true, to determine whether it states a claim upon which relief could be granted through a common law writ of certiorari.

## IV. Analysis

In Tennessee, release on parole for inmates serving sentences greater than two years is a privilege and not a right. Tenn. Code Ann. § 40-28-117(a) (2006); Tenn. Code Ann. § 40-35-503(b); *State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005) (citations omitted). The entity empowered with the discretion and authority to determine whether an inmate will receive parole is the Board of Probation and Parole, not the judiciary. *Brown v. Tenn. Bd. of Probation and Parole*, No. M2005-00449-COA-R3-CV, 2007 WL 2097548, at *1 (Tenn. Ct. App. July 6, 2007) (citations omitted); *Baldwin v. Tenn. Bd. of Paroles*, 125 S.W.3d 429, 433 (Tenn. Ct. App. 2003) (citation omitted). "Consequently, decisions of the Board . . . whether to grant or deny parole to an individual are not reviewable by the courts if done in accordance with the law." *Brown*, 2007 WL 2097548, at *1 (citation omitted); *accord Baldwin*, 125 S.W.3d at 433 (citation omitted).

"The question of whether such decisions are lawful is subject to limited review under the common law writ of certiorari." *Brown*, 2007 WL 2097548, at *1 (citing *Baldwin*, 125 S.W.3d at 433). The scope of this review is "very narrow." *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994). It seeks only to determine whether the Board exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily. *Id.* (citing *Yokley v. State*, 632 S.W.2d 123 (Tenn. Ct. App.1981)). "At the risk of oversimplification, one may say that it is not the correctness of the decision that is subject to judicial review, but the manner in which the decision is reached." *Id.* If the Board reached its decision in a lawful and constitutional manner, the decision will withstand judicial review regardless of

its intrinsic correctness. *Id.* Thus, the overarching consideration in this case is whether Mr. Harris alleged facts demonstrating that the Board exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily in denying him parole and deferring his next parole hearing for three years.

## A. Denial of Parole

Mr. Harris first argues that he alleged facts to demonstrate that the Board acted arbitrarily and illegally when it denied him parole. This argument is without merit. The Board expressly cited two reasons for its determination that Mr. Harris was an unsuitable candidate for parole: (1) there was a substantial risk that he would not conform to the conditions of his release, and (2) his release would depreciate the seriousness of his offenses and promote disrespect for the law. Reliance on these factors is not arbitrary; Tennessee Code Annotated section 40-35-503 expressly lists these factors as reasons the Board "shall" deny parole. Tenn. Code Ann. § 40-35-503(b)(1)-(2). Mr. Harris nevertheless contends that the amended version of Tennessee Code Annotated section 40-35-210 eliminates reliance on the seriousness of an inmate's offense during sentencing and, therefore, creates a conflict with the statutory provisions governing parole.[4] As the trial court noted, however, the statutory provisions pertaining to sentencing and parole address entirely different subject matters. The alteration of sentencing guidelines in no way suggests that the legislature intended to limit or change the factors upon which the Board may rely during a parole hearing. Simply stated, there is no conflict between Tennessee Code Annotated section 40-35-210 and Tennessee Code Annotated section 40-35-503 that invalidates the allegedly inconsistent provisions of the latter. Additionally, the Board denied Mr. Harris parole on the basis of two statutory factors. Its decision to deny parole on the basis of the demonstrated risk he would violate the terms of his release individually supports the Board's decision, even

---

[4]Mr. Harris bases his argument on Tennessee Code Annotated section 40-35-210(c), which states:

(c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:
(1) *The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications*; and
(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2006) (emphasis added).

if its reliance on the seriousness of the offenses was impermissible.

The fact that the Board previously granted parole to other prisoners guilty of more serious crimes does not demonstrate that the denial of parole in this case was arbitrary. *See Hopkins v. Tenn. Bd. of Paroles and Probation*, 60 S.W.3d 79, 83 (Tenn. Ct. App. 2001). As this Court has noted, "[p]arole decisions are fact-intensive and focus on the individual prisoner seeking parole." *Id.* Whether the Board previously granted parole to an inmate who committed comparable or more serious crimes is irrelevant; the sole question is whether the Board lawfully exercised its discretion when it determined that the inmate at issue should not receive parole. This Court has repeatedly recognized it is not at liberty to second-guess the intrinsic correctness of the Board's decisions. Mr. Harris's allegations on this issue, e.g., that the Board's decision was arbitrary in view of his prior good behavior and commission of less-grievous offenses than other parolees, nevertheless directly target the intrinsic correctness of the Board's decision and, therefore, do not state a claim upon which relief can be granted under a common law writ of certiorari.

We agree with Mr. Harris's contention that a parole decision is arbitrary and void if unsupported by material evidence. *Gordon v. Tenn. Bd. of Probation and Parole*, No. M2006-01273-COA-R3-CV, 2007 WL 2200277, at *2 (Tenn. Ct. App. July 30, 2007) (citing *Watts v. Civil Serv. Bd. of Columbia*, 606 S.W.2d 274, 276-77 (Tenn. 1980)). Mr. Harris, however, specifically alleged and it is undisputed that the Board denied him parole for at least two reasons: (1) the Board concluded there was a substantial risk that Mr. Harris would not conform to the conditions of his release in light of his admitted conviction for probation violation, and (2) the Board concluded his parole would depreciate the seriousness of his admitted offenses of incest and rape and promote disrespect for the law. Under the allegations of his own petition, the Board provided Mr. Harris with two adequate, legally supported reasons for denying his request for parole. We therefore find that Mr. Harris failed to state a claim upon which relief could be granted under the common law writ of certiorari with respect to the alleged arbitrary or illegal denial of his request for parole. *See Hopkins,* 60 S.W.3d at 83 (finding that a denial of parole based on the seriousness of an inmate's aggravated rape offense and the effect that granting parole might have on institutional discipline was not arbitrary or illegal).

### B. Deferral of Parole Hearing

The next question before this Court is whether Mr. Harris has alleged facts to support his claim that the Board's decision to defer his next parole hearing for three years was arbitrary. Mr. Harris contends that a three-year deferral was arbitrary per se, citing this Court's decision in *Baldwin v. Tennessee Board of Paroles*, 125 S.W.3d 429 (Tenn. Ct. App. 2003). In *Baldwin*, we considered whether an inmate serving a life sentence had stated a

cause of action where members of the Board who served staggered six-year terms had deferred his next parole hearing for twenty years. *Baldwin*, 125 S.W.3d at 434. We agreed with the inmate's position, reasoning that:

> the effect of the twenty-year deferral is not only to preclude reconsideration of [the inmate's] case by the members of the panel that declined to parole him, or by the other members of the current Board, but also to prevent the members of the Board that may be sitting in the years 2005, 2010, 2015 or 2020 from even making an initial consideration of whether [the inmate] could be a suitable candidate for parole. Under the panel's ruling, it is possible that the entire membership of the Board can completely turn over more than once before his case comes up for decision once again.

*Id.* The Board's decision effectively converted the inmate's sentence of life with parole to a sentence of life without parole, which undermined "the very provisions of the parole statutes that empower the Board to grant parole." *Id.* We therefore concluded that the twenty-year deferral amounted to "an arbitrary withdrawal of the power to parole from future Board members" and reversed the dismissal of the inmate's petition. *Id.*

Mr. Harris interprets our decision in *Baldwin* as prohibiting any deferral of an inmate's next parole hearing beyond the expiration of the term of the Board member with the shortest time remaining in his or her current term. Pointing to four members of the current Board with remaining terms of sixteen, sixteen, eighteen, and twenty-one months, Mr. Harris argues that the three-year deferral in this case arbitrarily removes the ability of future Board members to make an initial determination of whether parole is appropriate. Accordingly, Mr. Harris argues that the maximum period for which the Board could defer future consideration in his case was sixteen months and that anything longer was arbitrary per se. This position is without merit. Even if each of the four aforementioned Board members is replaced at the conclusion of his or her term, the newest four members of the Board will have an opportunity during their term to consider whether parole of Mr. Harris is appropriate. The Board is not required, as the appellant suggests, to determine the next date of an inmate's parole hearing in every case as to ensure that potential replacements for current members will have an opportunity to immediately consider whether to grant parole to a particular inmate. This Court has considered and rejected the suggestion that lengthier periods of deferral were arbitrary under similar reasoning in several cases following *Baldwin*. *E.g. Gordon*, 2007 WL 2200277, at *4 (finding that a deferral of five years was not arbitrary); *York v. Tenn. Bd. of Probation and Parole*, No. M2005-01488-COA-R3-CV, 2007 WL 1541360, at *6 (Tenn. Ct. App. May 25, 2007) (finding that a deferral of six years was not arbitrary), *reh'g denied* (Tenn. Ct. App. June 29, 2007); *Berleue v. Tenn. Bd. of Probation and Parole*, No. M2005-00363-COA-R3-CV, 2006 WL 1540255, at *4 (Tenn. Ct. App. June 5, 2006)

(finding that a deferral of five years was not arbitrary). We equally reject the suggestion here. Because Mr. Harris alleged no other reason for which the deferral could be found arbitrary, he failed to state a claim for which relief could be granted through a common law writ of certiorari.

## C. *Release Eligibility Date*

We perceive Mr. Harris's next argument as submitting that he alleged facts to support a claim that the Board arbitrarily and illegally denied him parole on the basis of an erroneous release eligibility date that he contends the Board miscalculated in violation of state and federal constitutional prohibitions against ex post facto laws. This argument is also without merit. The letter attached as an exhibit to Mr. Harris's petition, which he cites as demonstrating the Board's error, states: "Seriousness of Offense- Simply put, the punishment must meet the crime. The average time someone serves with your charge is 82 months. You have not served enough time for your conviction." This statement indicates only that the Board relied upon the period of eighty-two months as being the average time served by inmates who committed comparable offenses, which supports the Board's conclusion that parole of Mr. Harris would depreciate the seriousness of his offenses. This correspondence does not suggest that the Board calculated Mr. Harris's release eligibility date at eighty-plus months. The Board's consideration of his request for parole in the first instance conclusively demonstrates the error in this assertion. And Mr. Harris's allegation that the Board miscalculated his release eligibility date is clearly inconsistent with the remaining allegations in his petition regarding the Board's decision. Nevertheless, even if the Board improperly calculated his release eligibility date as alleged, Mr. Harris has not explained how it would invalidate the Board's decision to deny his request for parole in light of its alleged reliance on additional bases for denial. We therefore conclude that Mr. Harris failed to state a claim upon which relief could be granted pursuant to the common law writ of certiorari.

## D. *Recording of Hearing*

Mr. Harris next submits that he alleged facts to support a claim that the Board committed procedural error when it declined to provide him a recorded copy of his parole hearing. His amended petition asserted that his aunt requested a copy of the hearing on his behalf, paying a ten-dollar fee to the Board. She thereafter received a package from the Board that allegedly included a Hannah Montana compact disc but not a recording of the parole hearing. Mr. Harris's aunt offered to return the erroneously sent Hannah Montana compact disc in exchange for the requested recording of Mr. Harris's parole hearing, but she received no response from the Board. Assuming these facts as true, Mr. Harris failed to state a claim for procedural error with respect to the decision of the Board to deny his request for parole. Even if Mr. Harris could demonstrate that the Board illegally withheld the recording

of his parole hearing, we find that it would not provide a basis for reversing or vacating the Board's prior, legally supported decision under the alleged facts. And Mr. Harris has not alleged or argued that review of the recording would reveal any additional bases upon which the courts could grant relief. Thus, we again conclude that Mr. Harris failed to state a claim upon which relief could be granted through the common law writ of certiorari.

As a final matter, Mr. Harris requests an order directing the Board to provide him a recording of the hearing in exchange for the Hannah Montana compact disc. This request for injunctive relief, however, is in substance an original cause of action that did not arise out of the Board's initial denial of parole. It cannot be joined with an appellate cause of action such as a petition for common law writ of certiorari. *White v. Ray*, No. W2009-01766-COA-R3-CV, 2010 WL 1711772, at *6 (Tenn. Ct. App. Apr. 29, 2010) (citing *Hunter v. Metro. Bd. of Zoning Appeals*, No. M2002-00752-COA-R3-CV, 2004 WL 315060, at *4 (Tenn. Ct. App. Feb. 17, 2004)). Mr. Harris's request for injunctive relief "should have been dismissed at the trial level and is not properly before this Court on appeal." *Id.* (citing *Tenn. Envtl. Council v. Water Quality Control Bd.*, 250 S.W.3d 44, 58-59 (Tenn. Ct. App. 2007); *Winkler v. Tipton County Bd. of Educ.*, 63 S.W.3d 376, 383 (Tenn. Ct. App. 2001); *Byram v. City of Brentwood*, 833 S.W.2d 500, 502 (Tenn. Ct. App. 1991) (citation omitted); *Goodwin v. Metro. Bd. of Health*, 656 S.W.2d 383, 387 (Tenn. Ct. App. 1983)). We conclude that Mr. Harris's request for injunctive relief must be dismissed.

## V. Conclusion

We affirm the dismissal of Mr. Harris's petition for common law writ of certiorari for the reasons stated herein. Costs of this appeal are taxed to the appellant, Gerald Harris, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE